# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# ROME DIVISION

Ms. Serpentfoot,

    Plaintiff,

v.

                   CIVIL ACTION FILE
                   NO. 4:09-CV-0187-HLM

Rome City Commission,
et al.,

    Defendants.

## ORDER

This case is before the Court on Defendants Rome City Commission and Individual Commissioners' Motion to Dismiss Plaintiff's Prayer Claim [36], on Defendants Floyd County Commission and Individual Commissioners' Amended Motion to Dismiss [25], and

on Plaintiff's Response to Court Order of March 3, 2010 and Motion to Dismiss Plaintiff's "Prayer Claim" [38].

## I. Standard Governing Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(6) allows the Court to dismiss a complaint, or portions of a complaint, for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When reviewing a motion to dismiss, the Court must take the allegations of the complaint as true, and must construe those allegations in the light most favorable to the plaintiff. Rivell v. Private Health Care Sys., Inc., 520 F.3d 1308, 1309 (11th Cir. 2008).

Although a court is required to accept well-pleaded facts as true when evaluating a motion to dismiss, it is not required to accept the plaintiff's legal conclusions.

2

<u>Sinaltrainal v. Coca-Cola Co.</u>, 578 F.3d 1252, 1260 (11th Cir. 2009) (citing <u>Ashcroft v. Iqbal</u>, 556 U.S. ---, ---, 129 S. Ct. 1937, 1949 (2009)). When evaluating the sufficiency of a plaintiff's complaint, the court makes reasonable inferences in favor of the plaintiff, but is not required to draw the plaintiff's inference. <u>Id.</u> (quoting <u>Aldana v. Del Monte Fresh Produce, N.A., Inc.</u>, 416 F.3d 1242, 1248 (11th Cir. 2005)). Similarly, the Court does not accept as true "'unwarranted deductions of fact'" or legal conclusions contained in a complaint. <u>Id.</u> (quoting <u>Aldana</u>, 416 F.3d at 1248).

Finally, the Court may dismiss a complaint "if the facts as pled do not state a claim for relief that is plausible on its face." <u>Sinaltrainal</u>, 578 F.3d at 1260. In <u>Bell Atlantic Corporation v. Twombly</u>, 550 U.S. 544 (2007), the Supreme

3

Court observed that a complaint "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." 500 U.S. at 555. Although factual allegations in a complaint need not be detailed, those allegations "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Id. Moreover, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949. The mere possibility that the defendant might have acted unlawfully is not sufficient to allow a claim to survive a motion to dismiss. Id. Instead, the well-pleaded allegations

4

of the complaint must move the claim "across the line from conceivable to plausible." <u>Twombly</u>, 550 U.S. at 570.

## II.  Background

### A.  Procedural Background

On March 3, 2010, the Court granted in part and denied in part Defendants' Motions to Dismiss. (Order of March 3, 2010.) The Court dismissed all of Plaintiff's claims except for a purported claim for an injunction against prayer at Rome City Commission and Floyd County Commission Meetings. (<u>Id.</u> at 101-02) The Court noted:

> None of the Defendants addressed Plaintiff's claim relating to prayer at local government meetings in their Motions to Dismiss. Plaintiff's First and Second Amended Complaints, however, are not a model of clarity, and even a careful reading of those documents would not

5

necessarily give the impression that Plaintiff was seeking injunctive relief related to prayer at local meetings. However, as noted above, because of Plaintiff's pro se status, the Court must "construe the complaint more liberally than it would formal pleadings drafted by lawyers." Powell, 914 F. 2d at 1463.

(Id. at 91.) The Court ordered Plaintiff and Defendants Rome City Commission and Floyd County Commission to file further briefs on Plaintiff's request for an injunction. (Id.)

Defendant Rome City Commission and its Individual Commissioners filed their Motion to Dismiss Plaintiff's "Prayer" Claim. (Docket Entry No. 36.) Defendant Floyd County Commission and its Individual Commissioners filed their Response to the Court's March 3, 2010, Order on March 17, 2010. (Docket Entry No. 37.) On March

AO 72A

(Rev.8/82)

31, 2010, Plaintiff filed her response to the Court's march 3, 2010, Order. Embedded within Plaintiff's response was a Motion for Reconsideration regarding the Court's March 3, 2010, Order. (Docket Entry No. 39.) The Court denied Plaintiff's Motion for Reconsideration and stated

> The Court would not have read Plaintiff's Complaint to include a request for injunctive relief but for Plaintiff's statement in her response to the Motions to Dismiss that she was in fact seeking injunctive relief on that issue. (See Pl.'s Resp. Def. Salmon's Mot. Dismiss at 2 (stating Plaintiff was seeking "[a]n injunction against prayers at government meetings here").) In consideration of Plaintiff's pro se status, and her assertion that she was seeking injunctive relief, the Court construed Plaintiff's Complaint to include a prayer for injunctive relief.

AO 72A

(Rev.8/82)

(Order of April 8, 2010, at 7n.1.) The Court ordered Plaintiff to file a document stating whether she intended to pursue her purported injunctive relief claim. (Id. at 7-8.) Plaintiff filed her response to the Court's Order on April 22, 2010. (Docket Entry No. 42.)

The briefing schedule for these Motions is now complete and the Court concludes that this issue is ripe for resolution by the Court.

## B. Plaintiff's Allegations Related to Prayer

The Court summarized Plaintiff's lengthy First and Second Amended Complaints in its March 3, 2010, Order. (Order of March 3, 2010, at 5-37.) The Court will not repeat that entire summary in this Order, but reiterates the portion of Plaintiffs' Complaints that

AO 72A

(Rev.8/82)

plausibly could be related to her purported injunctive

relief claim.

> Plaintiff contends that the City Defendants, as well as their "collaborator defendants" have:
> robb[ed] Plaintiff of government by law with establishment of religion: CHURCH/state, Judeo-Christianity, and using prayers at government meetings to subject Plaintiff to religious prejudice, rob her of her civil liberties and make her subservient to their Supreme Lord and Master, out of Israel, their "Holy Land", pursuant to the continuing corrupt subjugation policies of their predecessors from the European Discovery era, partnering government with Church and Commerce; using "Christian" Missions and Indian Trading Posts, to give what they called "fauna", "not even human" Native American "beasts", "wild as wolves", like primitive "Gentile Dogs" or followers of Egypt's jackal DOG GOD, Anubis, to be given underdog obedience training, of servants, slaves, Women, reduced to subservience. . . ."

AO 72A

(Rev.8/82)

(Sec. Am. Compl. ¶ 17.)

Plaintiff also contends :

Establishment of Religion, Another God too: COMMERCE, Pluto, the Greek God of Wealth. Besides the Obedience training and subservience forced upon women, Native Americans, Chinese, and Black Slaves, the City of Rome, like its predecessors, also robbed and enslaved indentured servants, homeless laborers, peasants, and tenant farmers, using the Indian Trading Post AKA "The Company Store" tactics–which even our national government used and took charge of, if it was interstate or international. They enslaved many Indians to alcohol, greed and debt–and as shown in numerous treaties–robbed the tribes and nations of land to pay the debts of those who have been led to loss of self control under Pluto, the Greek God of greed and wealth–the one God most firmly established in Rome Ga., though they do not take his name in vain–or name him at all–they call it the Chamber of Commerce, or Economic

AO 72A

(Rev.8/82)

Development, Re-development, or "The Planning Commission", AKA the "Money Changers" whose tables Jesus overturned in the Jewish Temple when he accused them of turning his "House of Prayer" into a "Den of Thieves" (Matthew 21:12, 13). Rome, et al, defendants have them both firmly established in a marriage of CHURCH, COMMERCE, and STATE, remarkable well illustrated in a full page Judeo-Christian ad, such as continues to run every Saturday in the Rome Tribune. . . .but the ad entitled "Christian Marriage", which ran, June 8, 1978, was endorsed by the City of Rome and the Floyd County sheriff [and most of the Chamber of Commerce]; likewise in violation of the 1st, 9th, 10th, 11th, 14th Amendment, and Article 6, § 1, cl. 2, and § 1, cl. 3, and other parts of the U.S. constitution.

(Sec. Am. Compl. ¶ 18.)

Plaintiff states:

Knowing the prejudice spread by their Judeo-Christian prayers at government meetings [and Pluto wealth frauds in chambers], and of their numerous

11

injuries to Plaintiff–made notorious for objecting–Rome and her collaborators have the option and power to change their unlawful hurtful policy, but deliberately continue their long established religious marriage of Church, Commerce and State, with prayers to the Judeo-Christian Gods, and most of their actions pursuant to the Greek Gods of wealth who likewise enslave the many for the privileged few Lords/Masters in violation of Plaintiffs right to the control of law, and in violation of Article VI, §, cl. 2, 3, et al, of the U.S. Constitution Amendments 1-13, 14.15; and making them liable for Plaintiff's injuries. . . under: 42 U.S.C. Sec. 1983, R.I.C.O. laws, 18 U.S.C. §§ 1961, et seq. and common law of torts , and equity.

(Sec. Am. Compl. ¶ 21.)

Finally, Plaintiff contends that the above described events amount to a religious test for public office. Plaintiff states:

The prejudice spread by Judeo-Christian prayers at governmental meetings, has put Plaintiff to a religious test when she refuses to

stand and pretend to pray or honor their illegal prayers in public and on televised meetings and how they and their collaborators had her arrested and made out a criminal because she cannot get a fair trial in the prejudiced Georgia Courts (as shown more specifically under the claims against the Judicial officers) such that one of her sentences was 5 years or banishment. . .the next day after Plaintiff qualified to run for public office May 4, 1998, D.A. Colston was on the front page of the Rome News Tribune stating-"We've got to put Serpentfoot back in jail, she won't leave the county but is running for the county commission."   All because Plaintiff failed in silence or hypocrisy, the Religious Test of tolerating Rome's well established religious prayer policy to rob plaintiff of a government of the people and law, in deliberate defiance of Article VI, §, cl. 2, 3, et al, of the U.S. Constitution, Amendments 1-13, 14.15; R.I.C.O. laws 18 U.S.C. §§ 1961, et seq. and for which they are

13

AO 72A

(Rev.8/82)

> liable for damages too under Sec.
> 1983.

(Second Am. Compl. ¶ 21.)

(Order of March 3, 2010, at 12-17.)

## III. Discussion

### A. Standard for Injunctive Relief

"A district court may grant injunctive relief only if the moving party shows that: (1) it has a substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest." Siegel v. Lepore, 234 F.3d 1163, 1176 (11th Cir. 2000) (en banc). "For a

14

permanent injunction, the standard is essentially the same [as that for a preliminary injunction], except that the movant must establish actual success on the merits, as opposed to a likelihood of success." KH Outdoor, LLC, v. City of Trussville, 458 F. 3d 1261, 1268 (11th Cir. 2006). "[B]ecause [an injunction] is an extraordinary remedy, it is available not simply when the legal right asserted has been infringed, but only when that legal right has been infringed by an injury for which there is no adequate legal remedy and which will result in irreparable injury if the injunction does not issue." Alabama v. U.S. Army Corps of Eng'rs, 424 F.3d 1117, 1127 (11th Cir. 2005).

AO 72A

(Rev.8/82)

Plaintiff did not make any mention of the four-part injunction test in her Complaint.[1]  Because the Court concludes that Plaintiff's Complaint fails to plead facts that, if proven, would make it likely that she would succeed on the merits of her "prayer" claim, the Court will not consider irreparable injury, the balance of equities between the parties, and the public interest.

## B.  Law Related to Legislative Prayer

The United States Court of Appeals for the Eleventh Circuit discussed the legitimacy of legislative prayer in the recent case of <u>Pelphrey v. Cobb County, Ga.</u>, 547

---

[1]In fact, the only portion of Plaintiff's Complaint that would lead anyone to conclude that she was seeking injunctive relief is the use of the word "Enjoin" in Count 6, ¶ 17.  (<u>See</u> Sec. Amended Compl. ¶ 17 ("Claim for an Order to enjoin Rome and her collaborator defendants from further robbing Plaintiff of government by law with Establishment of Religion. . . .").)

AO 72A

(Rev.8/82)

F.3d 1263 (11th Cir. 2008). In <u>Pelphrey</u>, several residents of Cobb County, Georgia, challenged the practice of the Cobb County Commission of beginning its meetings with a sectarian prayer. <u>Id.</u> at 1266. The Eleventh Circuit focused its inquiry on the United States Supreme Court's decision in <u>Marsh v. Chambers</u>, 463 U.S. 783 (1983). The court, stated, in reference to <u>Marsh</u>:

> Our "delicate and fact-sensitive" inquiry is evident in the area of legislative prayer, which the Supreme Court, in <u>Marsh</u>, 463 U.S. 783, 103 S. Ct. 3330, 77 L.Ed.2d 1019, excepted from the traditional analysis under the Establishment Clause. <u>See</u> <u>Lee v. Weisman,</u> 505 U.S. 577, 597, 112 S. Ct. 2649, 2660-61, 120 L. Ed.2d 467 (1992). <u>Marsh</u> involved a challenge to invocations offered by a state-employed chaplain at the beginning of each session of the Nebraska Legislature. 463 U.S. at 784, 103 S.Ct. at 3332. The Court of

AO 72A

(Rev.8/82)

Appeals for the Eighth Circuit had applied the three-part inquiry from <u>Lemon v. Kurtzman</u>, 403 U.S. 602, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971), and concluded that the invocations violated the Establishment Clause. <u>Marsh</u>, 463 U.S. at 786, 103 S. Ct. at 3333. The Supreme Court reversed and, without applying <u>Lemon</u>, upheld the Nebraska legislative prayer practice as an act that was "deeply embedded in the history and tradition of this country" that had not "been exploited to proselytize[,] ... advance[,] ... or ... disparage any ... faith or belief." Id. at 786, 794-95, 103 S. Ct. at 3333, 3338.

The Eleventh Circuit noted that, the Supreme Court ruled in <u>Marsh</u> that it did not violate the Establishment Clause of the United States Constitution for a state legislature to employ a paid chaplain to begin each legislative session with a sectarian prayer. <u>Pelphrey</u>, 547 F.3d at 1270. The court noted that the core holding of <u>Marsh</u> was:

18

> The content of the prayer is not of concern to judges where, as here, there is no indication that the prayer opportunity has been exploited to proselytize or advance any one, or to disparage any other, faith or belief. That being so, it is not for us to embark on a sensitive evaluation or to parse the content of a particular prayer.

Pelphrey, 547 F.3d at 1270 (quoting Marsh, 463 U.S. at 794-95.)

Applying Marsh, and the cases that followed, the Eleventh Circuit affirmed the decision of the district court that Cobb County's use of sectarian prayer did not offend the Establishment Clause because the prayers offered at the meetings did not advance a single faith. Pelphrey, 547 F.3d at 1277-78. The Court stated:

> Because there is no clear error in the findings that the prayers of the County Commission were not exploited to advance one faith or

AO 72A

(Rev.8/82)

belief, we need not evaluate the content of the prayers. The federal judiciary has no business in "'compos[ing] official prayers for any group of the American people to recite as a part of a religious program carried on by government ....'" Lee, 505 U.S. at 588, 112 S. Ct. at 2656 (quoting Engel v. Vitale, 370 U.S. at 425, 82 S. Ct. at 1264, 8 L. Ed.2d 601).

Id. at 1277.

## C. Analysis

Based on the Court's reading of Pelphrey and Marsh, the Court concludes that Plaintiff has failed to plead facts sufficient to support her claim for injunctive relief. Pelphrey and Marsh make it clear that sectarian prayers offered before the opening of a legislative session have a long and accepted history under the United States Constitution and that a court should not engage in analysis of the content of legislative prayers

AO 72A

(Rev.8/82)

unless there is some proof that those prayers are "exploited to advance one faith or belief." Pelphrey, 547 F.3d at 1277-78.

Plaintiff alleges that Defendants Rome City Commission and Floyd County Commission have "robb[ed] her of government by law," by using prayers at government meetings to subject [her] to religious prejudice." (Sec. Amended. Compl. ¶ 17.) Plaintiff alleges that the prayers offered are "Judeo-Christian," but also contends that Defendants violate the Establishment Clause by pursuing actions that worship "Pluto, the Greek God of greed and wealth." (Id. ¶ 18.) Plaintiff alleges that "[t]he prejudice spread by Judeo-Christian prayers at government meetings, has

21

put Plaintiff to a religious test when she refuses to stand and pretend to pray or honor their illegal prayers in public and on televised meetings. . . ." (Id. ¶ 21.)

Based on the above allegations, Plaintiff has at best claimed that Defendants Rome City Commission and Floyd County Commission offer prayers that are Judeo-Christian or that are based on a secret worship of Pluto, the Greek god of wealth. However, Pelphrey and Marsh make it clear that simply offering sectarian prayers does not offend the Establishment Clause. Marsh, 463 U.S. at 793-94 (upholding use of paid chaplain who offered prayers in the "Judeo-Christian tradition"). In order to violate the Establishment Clause, the prayers necessarily must be offered to "proselytize or advance any [religion],

AO 72A

(Rev.8/82)

or to disparage any other. . .faith or belief." Id. at 794-95.

Plaintiff has made no allegations regarding any current practice of Defendants Rome City Commission and Floyd County Commission that either advances one faith or disparages another. Plaintiff disagrees with the use of sectarian prayers at local commission meetings, but has not alleged any facts that would support a finding that those prayers violate the Establishment Clause. The Court therefore concludes that Plaintiff's request for injunctive relief is not likely to succeed on the merits and Plaintiff's claim for injunctive relief consequently fails. The Court therefore grants Defendants Rome City Commission and Individual Commissioners and Floyd County Commission and Individual Commissioners'

AO 72A

(Rev.8/82)

Motions to Dismiss.

## IV. Conclusion

ACCORDINGLY, the Court **GRANTS** Defendants Rome City Commission and Individual Commissioners' Motion to Dismiss Plaintiff's Prayer Claim [36] and **GRANTS** Defendants Floyd County Commission and Individual Commissioners' Motion to Dismiss with regard to Plaintiff's Prayer Claim [25]. The Court **DIRECTS** the Clerk to terminate Defendants Rome City Commission and its Individual Commissioners and Floyd County Commission and its Individual Commissioners.

IT IS SO ORDERED, this the 30 day of April, 2010.

_____
UNITED STATES DISTRICT JUDGE

AO 72A

(Rev.8/82)